UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEANNA YVETTE NASH,

    Plaintiff,

v.                                                           Case No. 8:23-cv-230-CPT

COMMISSIONER OF SOCIAL SECURITY,[1]

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of her claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). (Doc. 17). For the reasons discussed below, the Commissioner's decision is reversed, and the case is remanded.

I.

The Plaintiff was born in 1977, has a limited education, and has past relevant work experience as both an administrative assistant and a cake decorator. (R. 31, 95). In June 2016, the Plaintiff applied for DIB and SSI, alleging disability as of October

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Federal Rule of Civil Procedure 25(d), Mr. O'Malley is substituted for the former Acting Commissioner, Kilolo Kijakazi, as the Defendant in this suit.

1

2015 due to foot pain and mental health issues. *Id.* at 15, 327–40, 373. The Social Security Administration (SSA) denied the Plaintiff's applications both initially and on reconsideration. *Id.* at 184–89, 194–203.

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in October 2018 and rendered an unfavorable decision in June 2019. *Id.* at 84–94, 162–74. The Appeals Council granted the Plaintiff's request for review, however, and thereafter remanded the proceeding to the ALJ on the grounds that there was no documentation in the record showing the results of a November 2018 consultative examination. *Id.* at 181–83. The ALJ subsequently held hearings on the Plaintiff's disability claims in October 2020 and September 2021, at which the Plaintiff appeared with counsel and testified on her own behalf. *Id.* at 47–83. A vocational expert (VE) also testified. *Id.* at 58–63.

In a decision issued in May 2022, the ALJ found that the Plaintiff: (1) had not engaged in substantial activity since her alleged onset date in October 2015; (2) had the severe impairments of generalized anxiety disorder, major depressive disorder, post-traumatic stress disorder, degenerative disc disease with radiculopathy, as well as bilateral hallux valgus,[2] pes planus,[3] and hammertoes; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity

---

[2] Hallux valgus is a common foot deformity. *See* Hallux Valgus, The Free Dictionary, https://medical-dictionary.thefreedictionary.com/hallux+valgus (last visited Mar. 14, 2024); *Reid v. Astrue*, 2009 WL 368656, at *10 n.27 (S.D. Fla. Jan. 8, 2009).

[3] Pes planus is also known as flat feet. *See* Pes Planus, The Free Dictionary, https://medical-dictionary.thefreedictionary.com/pes+planus (last visited Mar. 14, 2024); *Nicholson ex rel. A.R. v. Astrue*, 2012 WL 1202176, at *5 n.10 (S.D. Ala. Mar. 15, 2012).

of any of the listings;[4] (4) had the residual functional capacity (RFC) to perform sedentary work subject to various limitations;[5] and (5) based on the VE's testimony, could not engage in her past relevant work but was capable of making a successful adjustment to other jobs that exist in significant numbers in the national economy. *Id.* at 18–33. In light of these findings, the ALJ concluded that the Plaintiff was not disabled. *Id.* at 33.

The Appeals Council denied the Plaintiff's request for review. *Id.* at 1–3. Accordingly, the ALJ's decision became the final decision of the Commissioner. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (citation omitted).

II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R.

---

[4] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). When a claimant's affliction matches an impairment in the listings, the claimant is automatically entitled to disability benefits. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

[5] These limitations included, *inter alia*, that the Plaintiff could lift and/or carry ten pounds occasionally and five pounds frequently; could walk for one hour, stand for two hours, and sit for seven hours in an eight-hour day; could sit for four hours before having to change position, for at least thirty minutes before resuming sitting; required the use of a cane for ambulation; could occasionally push and/or pull with her upper extremities and reach above shoulder level with both arms; could frequently reach waist to chest with both arms and could handle, finger, and feel with both hands; could not climb ladders and scaffolds; could occasionally climb ramps and stairs, balance, crouch, and stoop; and could frequently kneel and crawl. (R. 21–22).

§§ 404.1505(a), 416.905(a).[6] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[7] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). Although the claimant bears the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove she

---

[6] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[7] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

cannot engage in the work identified by the Commissioner.  *Goode*, 966 F.3d at 1279.  In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'"  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the claimant's disability application after a hearing.  42 U.S.C. § 405(g).  Judicial review is confined to determining whether the Commissioner applied the correct legal standards and whether the decision is buttressed by substantial evidence.  *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted).  Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citations omitted).  In evaluating whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or make credibility determinations.  *Viverette*, 13 F.4th at 1314 (citation omitted); *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)).  Further, while a court will defer to the Commissioner's factual findings, it will not defer to his legal conclusions.  *Viverette*, 13 F.4th at 1313–14; *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

III.

The Plaintiff's central claims of error on appeal are that the ALJ improperly weighed the assessments made by a functional capacity evaluator, S. Rob Oyer, as well as the medical opinion offered by Dr. Raul Olivera. (Doc. 17 at 3–25); (Doc. 21 at 1–7). The Commissioner counters that the ALJ's evaluation of this challenged evidence was appropriate and supported by substantial evidence. (Doc. 20 at 5–19).

As noted above, the ALJ's task at step four is to determine the claimant's RFC and her ability to perform her past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To do so, an ALJ must decide what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. *Id.* §§ 404.1545(a)(1), 416.945(a)(1). In arriving at this finding, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1527(b)).[8] Medical opinions are statements from physicians, psychologists, or other acceptable medical sources "'that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite [her] impairment(s), and [the

---

[8] Although this Regulation has been amended effective March 27, 2017, the new Regulations only apply to applications filed on or after that date. *See* 20 C.F.R. §§ 404.1520c, 416.920c. Because the Plaintiff submitted her application in June 2016, the older version of the Regulation is controlling here.

6

claimant's] physical or mental restrictions.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)).

An ALJ must state with particularity the weight given to a medical opinion and the reasons therefor. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 834 (11th Cir. 2011) (per curiam) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). In rendering this determination, an ALJ must take into account: (1) whether the healthcare provider at issue has examined the claimant; (2) the length, nature, and extent of the provider's relationship with the claimant; (3) the medical evidence and explanation supporting the provider's opinion; (4) the degree to which the provider's opinion is consistent with the record as a whole; and (5) the provider's area of specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). Although an ALJ is required to assess all of these factors, he need not explicitly address each of them in his decision. *Lawton*, 431 F. App'x at 833.

The Regulations set forth three tiers of medical opinions: (1) treating physicians; (2) non-treating, examining physicians; and (3) non-treating, non-examining physicians. *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (citing 20 C.F.R. §§ 404.1527(c)(1)–(2), 416.927(c)(1)–(2)). Treating doctors' opinions are accorded the most deference because there is a greater likelihood that these providers will "be able to give a more complete picture of the [claimant's] health history." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019) (per curiam) (citing 20 C.F.R. § 404.1527(c)(2)). As a result, the ALJ must give a treating doctor's opinion substantial or considerable weight unless "good cause" is shown to

the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam) (internal quotation marks and citation omitted). "Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with his or her own medical records." *Schink*, 935 F.3d at 1259 (citations omitted). If an ALJ elects to "disregard a treating physician's opinion, . . . he must clearly articulate [his] reasons for doing so," *Hargress*, 883 F.3d at 1305 (internal quotation marks and citation omitted), and those reasons must be buttressed by substantial evidence, *Phillips*, 357 F.3d at 1241. In the end, irrespective of the nature of a physician's relationship with a claimant, an ALJ "is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion." *Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830, 832 (11th Cir. 2017) (per curiam) (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)).

In this case, Oyer completed a consultative examination of the Plaintiff in February 2020, in which he found that the Plaintiff could not meet the physical exertional limitations for sedentary work.[9] (R. 722–41). Specifically, Oyer determined, in pertinent part, that the Plaintiff could only occasionally lift eight

---

[9] The governing Regulation defines sedentary work as follows:
> Sedentary work involves lifting no more than [ten] pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).

8

pounds from the floor to her waist and from her waist to her shoulders and could only carry eight pounds thirty feet. *Id.* at 722. Oyer also determined that while the Plaintiff could sit frequently, she could only stand and walk without assistance infrequently and could not balance. *Id*. Oyer additionally opined that the Plaintiff could only infrequently push and pull with her left hand and could only occasionally pull and frequently push with her right. *Id.* And of import to the Plaintiff's instant challenge, the Plaintiff's primary healthcare provider, Dr. Juan Felipe Ortiz, as well as the Plaintiff's neurologist, Dr. Robert Martinez, both agreed with Oyer's functional capacity evaluation. *Id.* at 762–63, 765.

In September 2021, Oyer completed a second functional capacity assessment, in which he again opined that the Plaintiff could not satisfy the physical exertional restrictions for sedentary work. *Id.* at 970–73. Although Oyer's determinations in this later examination were similar to the ones he made in February 2020, some of his findings supported more robust limitations. These findings included that the Plaintiff could only lift five (rather than eight) pounds from the floor to her waist, could only carry five (rather than eight) pounds thirty feet, could not squat without support, could not pull with her left hand, and could only occasionally push with her right hand. *Id.* at 973.

In his decision, the ALJ referenced Oyer's functional capacity reports and stated that he accorded them only "moderate weight." *Id.* at 26. The ALJ reasoned:

> [T]he undersigned noted that in [Oyer's] initial findings the [Plaintiff] was observed to exhibit true pain behavior and overreaction behavior.

9

> Largely, these reports suggest that the [Plaintiff] does not meet the full range of sedentary classification level. The assessments were reviewed [by] Drs. Ortiz and Martinez, who agreed with the findings. The undersigned accorded moderate weight to these assessments, insofar[ ] as the [RFC] already provides significant exertional and nonexertional limits at less than a full range sedentary.

*Id.* (citations omitted). The ALJ stated later in his decision that his RFC determination was bolstered, "in part, by [the] . . . opinion evidence from Drs. . . . Martinez[ and] Ortiz." *Id.* at 31.

The Plaintiff now argues that the ALJ did not provide an adequate explanation for discounting Oyer's assessments which Drs. Ortiz and Martinez endorsed. (Doc. 17 at 6–17); (Doc. 21 at 1–4). The Court agrees.

To begin, Drs. Ortiz and Martinez can fairly be deemed to be treating physicians, as they provided care to the Plaintiff over a sustained period of time.[10] *See* 20 C.F.R. § 404.1527(a)(2) (explaining that a treating physician is someone who "provides [a claimant], or has provided [a claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]"). Yet, despite acknowledging that Drs. Ortiz and Martinez adopted Oyer's findings as their own, the ALJ did not accord those assessments the appropriate deference they were due. *See id.* § 404.1527(c)(2) ("[W]e give more weight to medical opinions from your treating [physicians]."); *see also Childs v. Astrue*, 2009 WL 902614, at *4 (M.D. Ala. Mar. 31, 2009) (applying the treating physician standard to a mental

---

[10] The Commissioner does not argue otherwise. In fact, the Commissioner cites the treating physician rule. *See* (Doc. 20 at 4).

10

RFC form signed by the plaintiff's treating physician even though the form was completed by the plaintiff's counselor). That is, the ALJ did not clearly articulate sufficient reasons, supported by substantial evidence, for assigning diminished weight to Oyer's findings which Drs. Ortiz and Martinez accepted. *Schink*, 935 F.3d at 1259 ("We have explained that the ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician.") (citing *Winschel*, 631 F.3d at 1179); *Davis v. Comm'r of Soc. Sec.*, 449 F. App'x 828, 833 (11th Cir. 2011) (per curiam) (noting that, unless an ALJ "clearly articulate[s] . . . good reasons" for disregarding a treating physician's opinion, his decision will not be affirmed on appeal) (internal quotation marks and citations omitted).[11]

    Instead, the only rationale the ALJ offered to buttress his determination was that (1) the Plaintiff was found to "exhibit true pain behavior and overaction behavior" and (2) the ALJ's RFC finding already accounted for "significant exertional and nonexertional limits at less than a full range sedentary." (R. 26). The first justification is plainly lacking. It does not cite, for example, any specific evidence—such as Drs. Ortiz's and Martinez's own treatment materials or the Plaintiff's testimony—that undermines the challenged assessments or establishes that those assessments are not bolstered by the entirety of the record. *See Schink,* 935 F.3d at 1262–63 (finding that

---

[11] It cannot be reasonably contested that these assessments were at least relevant to the ALJ's findings, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam); 20 C.F.R. §§ 404.1546(c), 416.946(c), and that the ALJ was thus required to set forth a proper basis for giving them less than substantial or considerable weight, *see Wilson v. Berryhill*, 2018 WL 4494112, at *7–8 (N.D. Ala. Sept. 18, 2018) (finding that the ALJ articulated good cause for discrediting a doctor's opinion adopting a physical therapist's functional capacity evaluation).

"to discount a treating physician's opinion because it [was] 'inconsistent with [the source's] own medical records,' an ALJ must identify a genuine 'inconsisten[cy]'" and that the ALJ's statement that the treating doctors' questionnaires were "inconsistent with other substantial evidence of record" is insufficient where the "ALJ failed to clearly articulate what evidence led [her] to [that] conclusion") (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)); *Freeman v. Comm'r of Soc. Sec.*, 2013 WL 6244527, at *7 (M.D. Fla. Dec. 3, 2013) ("Although the ALJ used the triggering language for the 'good cause' exception, his conclusions are unsubstantiated by reference to specific evidence in the record, and provide the reviewing [c]ourt with little guidance in determining whether the findings are supported by substantial evidence.") (citations omitted); *Anderson v. Astrue*, 2013 WL 593754, at *5 (M.D. Fla. Feb. 15, 2013) (concluding that the ALJ must do more than recite a good cause reason to reject a treating physician's opinion and must instead explain his reasoning with some specificity) (citations omitted).

The second reason put forth by the ALJ is likewise deficient. A fair reading of this justification is that the ALJ afforded less weight to Oyer's findings which Drs. Ortiz and Martinez approved because they did not conform to the ALJ's RFC determination. *See* (R. 26). This "cart-before-the-horse" approach is improper. *See Allen v. Colvin*, 2013 WL 1200616, at *14 (N.D. Fla. Mar. 25, 2013) ("Taking the ALJ's comments at face value, the ALJ seemingly dismissed expert medical opinions because those opinions were inconsistent with the ALJ's assigned RFC. The ALJ must formulate the RFC assessment based on the properly weighted medical evidence of

12

record. Inherently, then, the ALJ erred by discounting or dismissing medical opinions simply because such opinions were inconsistent with the RFC. This presents, respectfully, a cart-before-the-horse situation . . . .").

In an effort to overcome these flaws, the Commissioner argues that the ALJ's observation the Plaintiff engaged in both "true pain behavior and overaction behavior" did not "play[ ] any significant role in the ALJ's overall evaluation of the evidence." (Doc. 20 at 6 n.1). The problem with this contention is that it is wholly speculative, as it is not at all clear from the ALJ's decision what importance, if any, the ALJ placed on this evidence. This ambiguity is exacerbated by the fact that the two forms of behavior to which the ALJ refers—"true pain behavior" and "overreaction behavior"—cut against each other. Without further explanation from the ALJ, the Court cannot meaningfully assess whether, and the extent to which, the ALJ's remark buttresses or detracts from his disability finding. As the Eleventh Circuit has repeatedly emphasized in this respect, "our precedent holds [that an] ALJ's 'failure . . . to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal' in its own right." *Schink*, 935 F.3d at 1269 (quoting *Keeton*, 21 F.3d at 1066); *see also Jamison v. Bowen*, 814 F.2d 585, 588–89 (11th Cir. 1987) (concluding that a remand for clarification was necessary because the court could not discern whether the ALJ followed the statutory requirements and related regulations).

The Commissioner also intimates—in a single sentence in a footnote no less—that the ALJ's error is subject to a harmless error analysis. (Doc. 20 at 6 n.1). The

13

perfunctory manner in which the Commissioner has raised this argument constitutes a waiver on the matter. *See Grant v. Soc. Sec. Admin., Comm'r*, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (concluding that a party abandons a claim when, among other things, she "raises it in a perfunctory manner without supporting arguments and authority") (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014)); *Battle v. Comm'r, Soc. Sec. Admin.*, 787 F. App'x 686, 687 (11th Cir. 2019) (per curiam) ("Issues raised in a perfunctory manner . . . are generally deemed to be waived.") (internal quotation marks and citation omitted); *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (per curiam) (finding that a plaintiff waived an argument "because he did not elaborate on [the] claim or provide citation to authority about [it]") (citation omitted).

Based upon the above findings, the Court need not address the Plaintiff's remaining claim of error regarding Dr. Olivera's medical opinion. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (stating that where remand is required, it may be unnecessary to review other issues raised); *see also McClurkin*, 625 F. App'x at 963 n.3 (finding no need to analyze other issues when case must be reversed due to other dispositive errors). On remand, however, the Commissioner should reassess the entire record, providing sufficient reasons and readily-identifiable evidentiary support for his decision. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (stating that the ALJ must re-evaluate the entire record on remand).

IV.

In light of all the above, it is hereby ORDERED:

1. The Commissioner's decision is reversed, and the case is remanded for further proceedings before the Commissioner consistent with this Order.

2. The Clerk of Court is directed to enter Judgment in the Plaintiff's favor and to close the case.

3. The Court reserves jurisdiction on the matter of costs pending a further motion.

SO ORDERED in Tampa, Florida, this 20th day of March 2024.

*[signature]*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record